Case number 25-3233, Jacqueline Gaines v. Denise Cross, et al., oral argument not to exceed 15 minutes per side. Mr. Mezebov, you may proceed for the appellant. Good morning, Your Honors. May it please the Court, my name is Mark Mezebov, I'm representing Ms. Gaines, I would like to, excuse me, I'd like to reserve five minutes, if that would be. That's fine. Thank you. Your Honors, we have both constitutional claims and non-constitutional arguments to be made, but I am going to start with the constitutional argument, and that is this. This appeal stems from the principle that judicial candidates have a First Amendment right to speak in support of their candidacy. That's the Supreme Court speaking in Williams-Uley v. Florida Bar. There is no doubt that the precedence established by the Supreme Court in Uley and in the White case, and by this Court, established that speech, which is truthful, and speech which is about matters of public concern, made by candidates for judicial office, are entitled to the highest level of constitutional protection. Here, however, the District Court subordinated these First Amendment principles and the priority of constitutional speech, in favor of the Elrod Branty Doctrine, that accords to public employees, employers, I'm sorry, the discretion to regulate speech of candidates who are public employees, holding positions of trust and loyalty to their public employer. Here's where the District Court went astray, as far as we can see. No court, to our knowledge, has previously ruled that Elrod Branty Doctrine may place limits on the electoral speech made by a public employee, strictly in the employee's capacity as a candidate for judicial office, as contrasted to a public employee's speech in performance of his or her official duties. What if your client had explicitly criticized, I understand you have to get to the criticism here through some inferences, but let's say the candidate had explicitly criticized the judge by name, this judge is a terrible judge, I've worked for her for 20 years, she's terrible, and you should elect me because I'll be a good kind of judge. If the judge fires the magistrate slash candidate the next day, is there a constitutional claim there? There would be a constitutional claim because her speech, although dismissive of the public employer, critical of the public employer, is still protected constitutional speech. This does not mean she can go unscathed for that speech, but it won't be, it should not... What do you mean? I mean, she can't be dismissed for it, she can't be disciplined for it. Well, there is a process, but that process is found in the state judicial code, which has a disciplinary process for misconduct, if you will. But if it's a First Amendment violation, the state disciplinary code can't discipline her for it either. No, they can discipline her for a violation of the code if the code is narrowly tailored and has given notice to the candidate. The code would have to comply with the First Amendment substantive standards just like the firing would have to comply with the substantive standards. I believe that's correct, Your Honor. But I believe the issue would be, does the judicial code on which we're ostensibly firing this person comport with First Amendment principles? And then we're talking about strict scrutiny, we're talking about were these codes that she allegedly violated narrowly tailored? And you would say no, presumably. I would say presumably no.  But I might lose, when I may lose, but the person or persons who are going to fire my client are not going to be the public employer itself. It's going to be done through the judicial process. So you're saying that the First Amendment requires a procedural, like has a procedural component? Yes, it can have a procedural component. Where does that come from? Well, maybe using the term component is incorrect. But if you're going to fire someone for speech, a public employer, employee for his or her speech, you're going to have to meet head-on constitutional questions. Yes. And if all those facts occurred, and then the judge across went to the judicial code commission, called what you will committee, and complained that Ms. Gaines had impugned her and conducted herself in violation of the judicial code, I would think that Ms. Gaines could get penalized for that if, following the hearing, and if it's determined after applying strict scrutiny to the judicial code of judicial conduct, whether or not those sanctions against her are appropriate and consonant with the First Amendment. So you can't dismiss the First Amendment, but you can deal with it as part of the judicial code. So, but what you're saying is that you can't directly, a supervisor can't directly fire a candidate for judicial office without running through some process established by law. So you're importing a procedural due process component to the First Amendment. On the condition, Your Honor, that the speech, which has gotten her into this difficulty, was made in the course of her candidacy, and not as part of her duties as- Does this apply to all officers? So what if she, Ms. Gaines, was working in the Attorney General's office as a, I don't know, confidential policy-making aide to the Attorney General, but is also running for judge at the same time, and she goes out and she criticizes the Attorney General. She says, the Attorney General is a crook, and he's a terrible person, and I've worked for him for 10 years, and he's awful, and that's why you need to elect me as judge because I will keep that AG in line. And then he fires her the next day. There's no judicial process. She's not a judicial employee. He just fires her because, so does there need to be a process for that too? Well, I think the question would boil down to whether or not that speech, which is getting her fired, or maybe getting her fired, was made in the course of her candidacy or as a disgruntled employee. And I think you're- No, I'm saying she made it at a campaign rally. She's having a campaign event. She says the governor is corrupt, and then she wants to show up at the governor's office the next day and keep her job. No, I think in that case it would be maybe closer to a Garcetti case in which you'd look at whether or not this speech was made in the course of, as a citizen, but in this case a citizen meaning a candidate, as a candidate, or whether this was disgruntled employee giving vent to her spleen while at a campaign event. I think in that event she may run afoul of- But if she's running, she's running for judge because she wants to be a check on the corrupt governor who is also her current boss. And that's her pitch, like elect me as judge because the AG's a crook and you need good judges like me in office. And then she shows up to the governor's office the next day and he says you're fired, or the AG's office the next day and he says you're fired. Your view is William Hsiu-Li means strict scrutiny. Yes, my view is that that speech is constitutionally protected. She's speaking as a candidate and she has, and should have the highest level of protection. Are you familiar with our case of Samanskow v. County of St. Clair, 2005 decision? No, it's in our brief as I'm sitting here. This is a case where the candidate was an assistant prosecutor who ran for a vacancy in Clare County, Michigan. And his opponent was Mary Kelly who was another assistant prosecutor who had been appointed by the county attorney. And after he lost the primary, his boss, the supervisor, asked him to support Ms. Kelly and he said no I'm going to remain neutral. And he got, George, the supervisor, got mad at that and fired him because he wouldn't support Kelly. And we said that that is not a violation of the Constitution. That under the L. Rod Branny exception, that was okay. Now how do you distinguish that case? Well I think that case along with the other cases, Massilio and Rose and all of them, Latham, they all have to do with insubordination. A public employee not following the directive or the orders of his or her public employer. And that's the reason why that person got terminated. You don't think it's enough just the fact that Cross, the supervising, the judge here just decided that it would be incompatible, she wouldn't have trust in your client, etc., etc., was not enough reason under the L. Rod Branny exception to fire him? No, we have other problems with what the judge, the district court judge in this case in terms of handling the speech. But no, the fact that a candidate discomforts his or her public employer in the course of her candidacy in speaking about matters of public concern should not leave that person vulnerable to the whims or preferences of the public employer. Your client admittedly is a policymaking kind of employee, right? Well we may disagree with that ultimately, but we'll accept for purposes of this argument that she is holding a position of loyalty and confidence. But does that make her then unable to argue her case on her behalf as a candidate for fear that anything she says could be taken as a criticism of the public employer? That's not fair. And that's not what the electoral system is about. The electoral system is about allowing the electorate to make a determination about the qualifications and credentials. Sure, there's nothing stopping the electorate from deciding that your client should be a judge is a better candidate to be a judge. The question is whether she needs to do that without... She lost the election. Well, okay. But she didn't lose her job because she said something which was comparing her candidacy, her credentials with that of her opponent. What else are elections made of if you can't... Do you see, in your view, that entirely insulates the candidate from anything that would otherwise be insubordinate? Well, under the Constitution, yes. If she says insubordinate things in her speech, she can be disciplined. She can be called down. But through the system that we discussed earlier, which is through the Ohio Judicial Code, which talks about demeaning or making... You think that Cross would have to continue employing your client along with the one she ran against, and they both have to be magistrates in the same office? Well, yes, because both of them had the right to run. Both of them had the right to compare their credentials to those of the other person. And my client did nothing more than that. She did not impugn the judge. She was not insubordinate. She didn't say anything that violated any code or canons of ethics. Yeah, I understand there's some inferences that have to be made there. And that's another question which I'm running out of time to address, but we... You're actually out of time. All right, thank you. All right, unless you have further questions. All right, thank you. Yes, may it please the Court. I'm Robert Cooper-Bowen on behalf of Appellee Judge Cross. I want to touch first on a fundamental flaw I see in the appellant's argument, is that this notion that judicial candidacy is afforded the highest levels of First Amendment protection. All of the cases that appellant relies on, including the William U. Lee case, come out of disciplinary proceedings. They come out of proceedings where a grievance was filed against that candidate for the speech. And in those contexts, yes, they are afforded the highest level of First Amendment protection. But we're not talking about disciplinary proceedings. We're talking about public employment, which derives from the Pickering case, which then has been subsequently interpreted under L. Rod Branty and rose by this Court. And that carves out an exception to that highest level of First Amendment protection for public employees and gives public employers more leeway and includes a presumption in favor of the government for, you know, taking actions to support its fundamental functions. And when you say disciplinary proceedings, you're referring to proceedings to discipline the candidate as a candidate, not as an employee. Yes, exactly, exactly. And so Pickering was designed, in the subsequent cases interpreting that, for this specific purpose. Yes, maybe Ms. Gaines could not have been disciplined for this speech by the Ohio Disciplinary Council, the Ohio Supreme Court. But Judge Cross does have leeway in determining whether this speech interfered with her stated policy reasons with her office environment and to have loyalty in her office. And the idea that she would be forced to retain this employee who had directly impugned her court administrator is just unreasonable. And these attacks were not, attacks is a strong word, but these statements were not ones, you know, I have more experience. There may have been a little bit of that, but it was directly criticizing what Judge Petrella, she's now the judge, Judge Petrella did in her day-to-day life at Singled Out. She throws parties. She only hears so many cases a week. And then perhaps . . . She was a former Democrat. That must be awful, like Trump and Reagan, huh? Yeah, yeah, yeah. I didn't really understand whether the ad was supposed to be disparaging or the other way around. It was unclear to me, but in any event . . . Well, you know, it did go so far as to say, do you want someone who doesn't have children to be a domestic relations court judge, which, you know, as reflected in the complaint, Judge Cross found very offensive. And that was alleged in the complaint, too, that Judge Cross found it offensive, you know, said it reflected poorly on the court, and therefore she wanted to preserve that. I mean, having these two employees together after that just would have been untenable for her. So the idea that strict scrutiny applies, that there's this highest level of First Amendment protection is just not compatible with the cases actually examining public employment in that context. And to that extent, when you get to the Elrod Branty exception, as has been raised here, they've conceded this is a policymaking position. So really the only question that's on review was the district court's determination that this was policy or political-related speech. And I know Mr. Mezbov didn't have time to get to it, but in their brief they say, well, the district court applied the wrong standard for this because it didn't accept our facts as true. It made this determination that it was policy or political speech. But that is a question of law, as reflected in various cases of this court, in Rose, in Marcillio. And I think Marcillio, even though it's a Northern District case, is almost directly on point. And that case did involve a judicial candidacy. The assistant prosecutor was running for a county municipal court judge. And in that case, there was no discussion of this highest level of First Amendment protection. It was solely on the Elrod Branty exception. It does give the judge a fair, Judge Cross in this case, but a fair amount of power over the candidate though, right? So this is not a case where the magistrate judge directly criticized Judge Cross and said Judge Cross is corrupt or Judge Cross, I don't know, always, she doesn't read the briefs in her cases or whatever, some direct criticism. It's a little more subtle. So it does sort of maybe put a little chill on what the candidate can say, because it seems that the answer is, if the judge here, Judge Cross, in her view, thinks that what the candidate said crossed some amorphous line, then that's a fireable offense. And you can see how that would maybe chill candidate speech. Do you want to speak to that? Yeah, I do understand that point, but I think that's the purpose of that leeway. And I think why a lot of these cases, including Rose, talk about the efficient functioning of the workplace and criticizing another employee, you know, beyond kind of your, she wasn't touting necessarily her own qualifications. There was a little bit of that. But going directly against this other employee, you know. She was touting her own qualifications. There's a whole list on the one side of, you know, all of her qualifications. Yeah. And then, you know. And she compared them disfavorably to. Yes, yes. And the comment about not being a mother. So I see it is narrow there, but that still is a question of law as to what it is. This court has actually discussed in Hughes v. Region 7 authority that the question of fact area comes into when there is dispute over what was said or if it was even said. There's no dispute over that here. It's what was said. So there is a narrow distinction, but it also, it does give Judge Cross some leeway to make her own determination. And in the complaint, it says that Judge Cross told her, I think this reflects poorly on the court. And it does speak to how Judge Cross is, you know, delegating responsibilities. You know, she's throwing parties in her office. She's not making this employee do very much. She's employing people that don't have children to oversee a domestic relations court, which, you know, could make people or parties appearing before that court question. You know, oh, are these qualified people for what I'm doing here? Do these people have that, you know, moral or personal understanding of what I'm going through? And, you know, there's also, along with that narrow distinction, there is the note that there's a distinction, and this court has raised it, in Moss Holder v. Barnhart, distinction between matters of public concern and those of only private interest. So I see, you know, there is public concern about who you're voting for, who their qualifications are, but this wasn't a whistleblower case. This wasn't her going to the public and saying, you know, Judge Cross is corrupt. There's all these horrible things going. This was... But do you think that if those had been the concerns, if she had gone, if she had run for judge because we need someone to counter the corruption of Judge Cross, do you then think that Judge Cross couldn't fire her, consistent with the First Amendment? Well, that's kind of where I was going, because this is her candidacy. You know, it wasn't outside the context of a candidacy where she was just, you know, filing a grievance or something like that. There are personal... She has a personal interest in these statements and when making these statements. It's not a purely civic-minded statement. I mean, there's a civic component because she wants to be a judge. She wants to serve the community. But ultimately, it's for her own personal candidacy, her own ambitions. Well, she was speaking on a matter of public concern. You're not disputing that, are you, in effect, her candidacy? Well, I would say it's a matter of political and policy concern, which is kind of the analysis that is done. If it's solely a matter of political concern or public concern, it would likely be outside of a candidacy. And I think the Marsilio case speaks directly to that, where he alleged, you know, it's a good old boys club. There's all this corruption. And they still found that, you know, even though that was a more general statement about county politics as a whole, it wasn't necessarily a statement about his boss. Now, his boss, the prosecutor, was kind of implicated in that good old boys club. But I think that has a stronger argument for being a matter of public concern than here, when we're talking about the specific policies and political operations of Judge Cross's court and how she delegates responsibility. In Marsilio, they found that she didn't, or the plaintiff didn't state a claim, even though it was a more general, more public, arguably, statement than what we're dealing with here. So I think that also answers your question. If she had just alleged corruption of Judge Cross, I still think Judge Cross, and I mean in practicality, going back to what the Pickering case and L. Rod Branty are trying to support in terms of giving employers leeway, letting them consider the functioning of their office. If you're accusing your boss of corruption, I would think that you would be entitled to terminate that employee. Now, then you could go out and file a grievance or present evidence of that corruption, and possibly that employer would have other problems to face. But the whole purpose of this carve-out in the law is to give these public officials, especially when you're dealing with these confidential policy-making employees, which a magistrate is, we would argue, and as the district court found, where she acts in the stead of the judge in a lot of cases to preside over cases, to issue decisions, and really have a close relationship with the judge. And in terms of it being insubordination, I know it wasn't alleged in the complaint, but it's my understanding Judge Cross did tell them when they both ran, hey, let's keep this civil, let's treat each other with respect, and then when these pamphlets came out, Judge Cross was understandably offended and felt like Ms. Gaines had not followed her directives. So that was kind of an impetus for the allegations in the complaint that she found it offensive, reflected poorly on the court. So in sum, on the primary arguments here, I think it's fairly clear that the highest levels of First Amendment protection that the appellants speak of apply to disciplinary cases. They're not occurring in this public employment setting. In turn, Judge Cross had a reasonable belief and understanding that this speech would impact the functioning of her office and her ability to carry out the policies of her office. And finally, that the district court did apply the correct standard in determining this as a question of law, because there was no dispute over the facts as to what was said. The complaint further alleged what Judge Cross's response was to this. So there's no factual question. It's purely a legal question whether this was spoken policy and political concerns. And just briefly, you'll see in my brief, and I won't delve on it too long, but the district court didn't reach the issue of qualified immunity. This court could sui sponte. We raised it in our brief. And it goes back to Judge Cross's reasonable belief that she had authority to, excuse me, terminate Ms. Gaines for this speech. And relying on these cases and her understanding of the law, she viewed this speech as insubordination and reflecting poorly on her court. So even if we did get to the qualified immunity analysis, I believe that Judge Cross would be entitled to that as well. So are there any further questions? All right, thank you. Thank you, Your Honors. Your rebuttal. Listening to the argument of counsel and aware of the arguments that were made in the briefing suggests that Ms. Gaines's First Amendment rights as a candidate are only as great as Ms. As Judge Cross's skin is thick. In other words, I can run for office, but only to the extent I don't make my boss unhappy for anything I say. That's not what the First Amendment is intended to do. That's not what the Supreme Court was talking about. That's not what this court has talked about in the various cases in which regulations and rules have been confronted with First Amendment challenges. The First Amendment means something. I mean, what L. Rod Branty says Ms. Cross and Judge Cross could do. Could you rephrase that? I mean, well, you talk about the Supreme Court, but what about the L. Rod Branty? Well, I don't think you get to L. Rod Branty in this case. And that's where the district court went awry. There's no reason to go to L. Rod Branty. This should be just a First Amendment issue. Did Ms. Gaines speak as a candidate? Yes, she did. Is she being held to account because of the content of her speech? Yes, she is. Did the district court ever apply strict scrutiny to the regulations being imposed against her? No, it did not. Never even mentioned strict scrutiny. Where is the First Amendment if- But the key is that your client was an employee of the government. That's what's sort of different. Yes, she is. But that doesn't mean she has stripped of all her First Amendment rights. She's stripped of some, because that's what L. Rod Branty said. But the Supreme Court also says, if you're going to make our judicial candidates, make our judges run for office, you're going to have to deal with the public. And you're going to have to make speech. And you're going to have to inform them as to why they should vote for you, or why they shouldn't vote for the other persons. That's expected, and it's protected. It is protected. And I guess that Judge Gilman's question is, sure, but how far is it protected? So in other words, she can make the speech, all she wants to make the speech. The only question is whether she gets to keep her job. Well, and as I said, the states have developed codes and committees and commissions to regulate judicial speech. That was never utilized. No one ever. What case do you have that connects that code stuff with L. Rod Branty? Do you have a case? No, because L. Rod Branty has never been utilized, as far as we know, in a case in which the speech involved is speech solely made in the course of a judicial election. And there was nothing insubordinate in her speech. All the cases that counsel cites and that the court cites in its favor deal with insubordination. Well, what if it was actually insubordinate? So let's say the magistrate judge makes a, I assume this is how it works in family court, makes a report and recommendation to the judge. And the judge, Judge Cross, says, I reject the R&R entirely. I'm making my own findings. And then Ms. Gaines goes out and runs as a candidate and says, I was totally right in my R&R. The judge is completely wrong, and she's wrong in every case. Would that be insubordination? No, what would? So what is insubordination? Insubordination. That would exempt her from the first. Unless I misheard what you said, Your Honor. But in my view, insubordination is getting a direct order from your superior, your public employer, and refusing to follow that order in the performance of your duty. I see. So you can, as a magistrate judge, essentially get reversed by the district court judge. And you accept that, then you're not being insubordinate. But if you criticize it on the campaign trail, that's not insubordination. I think there's a different way to pose it, maybe. I'm not meaning to flip the script, so to speak. But it's conceivable that Ms. Gaines could have gotten dismissed, not because of what she said on the campaign trail, but because of what she did or did not do in the performance of her duties. The fact that she may have said something that discomfited the public employer during the course of her campaign speech is, that's just the way we work in America. That's what the First Amendment's right. And for example, let's flip the script. What if Judge Cross is corrupt? Yeah. Is Ms. Gaines prevented from speaking to that point? The electorate could decide, you know, she's full of it. We've heard from Judge Cross. We know her record. We've seen this, that, and the other. And we think Judge Gaines is just way off base, and we're not going to vote for her. That's the way the system is supposed to work. It's not by shutting the candidate up. If you're going to have elections, you have to allow the candidate breathing space to run her campaign. Well, nobody's going to offer breathing space. The problem is, can her continue employment? It's not a question of muffling her speech. Well, what if she were elected? What if the electorate said, yeah, we're putting you in? Could she then walk in as the elected judge, and Judge Cross say, hey, sorry to say, you're not going in the office. I know you won the campaign. I know you've been elected judge, but I'm firing you because you ticked me off. Well, I assume she doesn't have the power to fire an elected judge. Well, I ... Like, I assume, you know, she's running for ... No, well, you know what, well, I agree with that. So she's going to have to put up with an elected judge. Well, right, like, yeah. I mean, we don't get the right to fire each other. I assume that's also how ... That would be interesting. That wouldn't be ... But I assume that that just is not possible in a judicial office. You win the office, you can't ... Well, then Judge Cross should have stopped and fired Judge Ms. Gaines before the electorate spoke. Rather than going and registering a complaint with the judicial election board, she let the election go through. I guess she was waiting to see what happened. Well, she lost and then she fired her. But what if she had won and then she was stuck with Judge ... Then they'd have to ... Then life would go on. Life would go on. How would life go on in Judge Cross's office with two magistrates and one of them running for the judicial office said, hey, the way this Judge Cross's office works, you've got one great magistrate, that's me, and you've got one who's just really, really crummy and doesn't do the job and she's just a mess. And now Judge Cross is trying to operate with somebody there who is saying to the public who have to come before the other magistrate, Judge Cross is saying, I can't have you doing this. You are absolutely disrupting the way this office has to operate. You are causing the public to have no confidence in the way at least half of the magistrates are operating. I can't have that. And you're saying that because it was said in the context of a candidacy, the judge has no right to do anything about that. Well, we're changing the facts. And I mean, in this situation, it would be Judge Cross in charge until Judge Gaines now replaces her, I guess. But that's part of the beauty of the electoral process is that the people get to choose and it should not be Judge Gaines's boss who did not want her. Obviously, she favored the other candidate. She did not want Judge Gaines. But should Judge Gaines' future as a judge be dependent solely, not on what the electorate says, but on what her boss who doesn't happen to like her? And we were speaking so cavalierly about Judge Gaines's speech as if there was something wrong with it. The fact that she said something about children, is there anything remarkable about a candidate for office, be it a judicial office or any other office, who doesn't present his or her family and pictures of her children to demonstrate to the people that she's family friendly? Why would you want this person who has no children presiding over cases that involve the welfare of children? That's a little different from saying, I've got kids in their grade and look at their pictures. Well, the only thing Judge Gaines is saying is among my credentials, my background, my qualifications is this is a family court. We do deal with child matters. I am a parent. I have a greater, perhaps, sensibility or sensitivity to matters involving children than might someone who does not. And that's a legitimate concern. Do you have any further questions? Nope. All right, thank you very much for your arguments. Thanks to both counsel. The case will be submitted.